MDL 1782

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

MAY 11 2006

FILED
CLERK'S OFFICE

**BEFORE THE JUDICIAL PANEL ON**

**MULTIDISTRICT LITIGATION**

| | |
|---|---|
| **In re:** | **MDL Docket No. 1782** |
| **PHARMACY BENEFIT MANAGERS ANTITRUST LITIGATION** | |

PLEADING NO. 8

**REPLY MEMORANDUM IN SUPPORT OF MOTION UNDER 28 U.S.C. § 1407 BY BRADY ENTERPRISES, INC., *et al.*, TO TRANSFER FOR COORDINATED OR CONSOLIDATED PROCEEDINGS IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

Under Rule 7.2(d) of the Rules of Procedure for the Judicial Panel on Multidistrict Litigation (the "Panel"), Plaintiffs Brady Enterprises, Budget Drug, Heritage Pharmacy, the Pharmacy Freedom Fund, and the National Community Pharmacists Association (collectively the "Movants") respectfully submit this Reply Memorandum in support of their Motion for an Order transferring the Pending Actions (previously identified to the Panel) to the United States District Court for the Eastern District of Pennsylvania, where the Movants' action is pending, for consolidated or coordinated pretrial proceedings.

OFFICIAL FILE COPY

IMAGED MAY 11 2006

RECEIVED
2006 MAY 11 A 10:21
JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

Various parties filed a total of five responses to Movants' § 1407 Motion: (1) Medco, Merck, and PAID Prescriptions (collectively "Medco") responded in support of Movants' Motion requesting transfer to the Eastern District of Pennsylvania for consolidation or coordination, at least as to the three actions in which Medco is a defendant; (2) Plaintiff North Jackson Pharmacy (one of the plaintiffs in the Alabama actions against Medco, Merck, PAID, and Express Scripts) submitted a cross-motion for transfer to the Northern District of Alabama ("North Jackson Mem.")[1]; (3) Plaintiff C&C (the other of the two plaintiffs in the Alabama actions) filed a separate memorandum in support of transfer to the Northern District of Alabama ("C&C Mem."); (4) Defendants Caremark Rx, Inc., Caremark Inc., and AdvancePCS (collectively "Caremark") oppose transfer, or, in the alternative, suggest transfer to the Northern District of Illinois; and (5) Defendant Express Scripts Inc. opposes transfer, or, in the alternative, suggests transfer to the Northern District of Illinois.[2]

Because Movants believe that their § 1407 Motion and supporting memorandum ("Movants' Mem."), filed April 14, 2006, along with Medco's response in support of transfer to the Eastern District of Pennsylvania amply set forth the relevant facts demonstrating that transfer will best serve the interests of justice and efficiency and that the Eastern District of Pennsylvania is the best choice for transfer and consolidation or coordination, Movants will not re-argue the details of those issues here. Rather, this Reply Memorandum is limited to selected arguments that the non-supporting responding parties raise in response to Movants' Motion.

---

[1] Although styled as a "cross-motion," under Rule 7.2(h) of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation ("Panel Rules"), North Jackson's submission to the Panel constitutes a response to Movants' Motion, and Movants have treated it as such (after confirming the procedure with the Panel Docket Clerk) by submitting this Reply rather than filing a Rule 7.1(b) response.

[2] Plaintiffs' counsel in the California action, *Mike's Med. Ctr. Pharmacy v. Medco Health Solutions, Inc.*, No. 3:05-cv-05108 (N.D. Cal.), did not file a response. Under Panel Rule 7.2(c), failure to respond "shall be treated as that party's acquiescence to the action requested in the motion."

## I. The Alabama Plaintiffs Fail to Make a Case for Transfer to and Consolidation or Coordination in Alabama.

The Alabama plaintiffs assert several reasons why the circumstances favor transfer to and consolidation or coordination of these cases in Alabama, none of which is persuasive. First, they argue that the Alabama cases are the most advanced, because the Alabama court issued an opinion on class certification before the Pennsylvania court, which is considering Movants' fully briefed and argued motion. The Alabama plaintiffs' suggestion that Movants are attempting to "reap the rewards of the Alabama plaintiffs' effort and success,"[3] C&C Mem. at 4, is ironic, since *Movants* filed the first case after substantial investigation and with the support of major pharmacy associations. Only thereafter did the Alabama plaintiffs file their lawsuit to "reap the rewards" of the two lawsuits already filed in Pennsylvania. Further, the Alabama plaintiffs ignore the fact that Movants also have engaged in extensive discovery (both fact discovery and discovery related to class certification[4]), including document requests, interrogatories, and depositions; have engaged an expert, who also prepared reports and submitted to a deposition; and have thoroughly briefed and argued the issues related to certification of a broader class than the Alabama plaintiffs allege.

Contrary to the Alabama plaintiffs' assertions and clever use of quotation marks, *see* North Jackson Mem. at 5, Movants never stated that "the Alabama cases passed the Pennsylvania cases when the district court approved the Certified class and the Eleventh Circuit denied the

[3] In support of this unfounded assertion, C&C further states: "Coincidentally, the Pennsylvania plaintiffs' motion for transfer and consolidation did not arise until the Eleventh Circuit denied a review of the class certification in the Northern District of Alabama." C&C Mem. at 4. Given that Movants filed their § 1407 Motion on April 14, 2006 (having sent it to the Panel, the affected courts, and all affected parties on April 7, 2006) and the Eleventh Circuit did not deny review of the Alabama class certification decision until April 21, 2006, Movants would have to be clairvoyant. They are not.

[4] It appears that the Alabama parties (and likely the Illinois parties as well, given that the presence of the same plaintiffs in the Illinois action facilitated class discovery) focused primarily, if not solely, on class certification issues. *See* North Jackson Mem. Ex. B, at 5 (stating that "the parties conducted extensive discovery as to matters they deemed 'essential to class certification.'").

Rule 23(f) petition." Rather, Movants noted that, although the Alabama court had certified a class, Movants' class-certification motion was fully briefed and argued before Judge Fullam in the Eastern District of Pennsylvania, and a decision is imminent.

The Alabama plaintiffs' reliance on *In re L.E. Lay & Co. Antitrust Litig.*, MDL No. 187, 1975 WL 1004 (J.P.M.L. Feb. 10, 1975), to support their "most advanced" argument simply does not hold up in these circumstances. In *Lay*, the Panel determined the transferee forum on the basis that one of the cases was about to proceed to trial; as the Panel stated, "a factor to be considered in the selection of a transferee district is whether the pretrial proceedings in the action . . . in a particular forum are *significantly* more advanced than those in any of the Actions in the other jurisdictions." *Id.* at *1 (emphasis added). The facts here demonstrate that the Alabama case is *not* significantly more advanced. Indeed, it is telling that the Alabama plaintiffs omitted that key word from their argument, North Jackson Mem. at 8-9, or glossed over it, C&C Mem. at 7.

Nor is the certification of a class dispositive on the issue of where cases should be transferred under a § 1407 motion. This Panel has not hesitated to transfer cases to a district other than the one in which a class was certified. In *In re Master Key Antitrust Litig.*, 320 F. Supp. 1404, 1407 (J.P.M.L. 1971), for example, two national classes had been approved in the Eastern District of Pennsylvania. Nonetheless, the Panel transferred all cases to the District of Connecticut. *See also In re LTV Corp. Sec. Litig.*, 470 F. Supp. 859, 861 (J.P.M.L. 1979) (transferring cases to district other than district in which class was certified); *In re Alien Children Educ. Litig.*, 482 F. Supp. 326, 327 (J.P.M.L. 1979) (same). Further, the *Master Key* Panel rejected another argument the Alabama plaintiffs make here, which is that consolidation or coordination in Alabama is "[a]bsolutely [e]ssential to the [e]fficient [p]rogression of PBM

[a]ntitrust [l]itigation." North Jackson Mem. at 8. As the Panel stated, "we see no reason why the transfer of these cases . . . should result in any delay in the proceedings." *Master Key*, 320 F. Supp. at 1407.

As these cases demonstrate, the Alabama plaintiffs' assertions that no other judge can "employ the standard measuring stick regarding whether plaintiffs could proceed as a class," North Jackson Mem. at 13-14; C&C Mem. at 11, or that only the Alabama court can "ensure evenhanded class certification orders," Cross-motion ¶ 10, make no sense. Given the Pennsylvania court's vast experience with these cases in particular and complex cases in general, it is obvious that these arguments carry no weight.

Second, the Alabama plaintiffs assert that these cases belong in Alabama because they involve "more federal claims" and "more important defendants." Cross-motion ¶ 14; North Jackson Mem. at 9-10; C&C Mem. at 8. This is the Alabama plaintiffs' smoke screen, and it is telling that they cite no authority demonstrating that these are dispositive factors, particularly in these circumstances. As noted in Movants' Motion and Memorandum, both the Alabama and the Illinois cases allege two horizontal conspiracies, one of which is identical to the conspiracy alleged in Movants' complaint. Although the Alabama plaintiffs apparently attribute great importance to this,[5] the reality is that the two claims allege virtually identical conspiracies with the same effects on the plaintiffs and the class members in all actions (which in the Pennsylvania and California actions include all retail pharmacies in the United States). The only difference is that one alleged conspiracy is broader in that it encompasses all PBMs, while the conspiracy

[5] Caremark and Express Scripts also raise this issue, *see* Caremark Mem. at 11; Express Scripts Mem. at 5-6, and Caremark goes as far as stating that the "central focus" of the case is the alleged conspiracy among the PBMs. Other than the fact that the Alabama complaint styles the alleged conspiracy among the PBMs as "Claim I" and the alleged conspiracies among each individual PBM and its Plan Sponsors as "Claim II," there appears to be no indication that one claim is more important than the other. Indeed, the court made no such distinction in the opinion certifying the Alabama class. *See* North Jackson Mem. Ex. B. In fact, the opinion reverses the two claims, referring to the alleged conspiracy among Plans Sponsors as "Claim I" and the alleged conspiracy among PBMs as "Claim II." *Id.* at 11.

alleged in Claim II of the Illinois and Alabama cases is narrower, and includes individual PBMs with their plan sponsors. Indeed, the two claims are very similar in their allegations. *Compare* Movants' Mem. Ex. C ¶¶ 66-72 *with* ¶¶ 74-81. *See also* Medco Response at 2-5 (detailing the "matching, or overlapping, factual contentions" in each action concerning the nature, means of implementation, and common mixed issues of law and fact).[6]

The Alabama plaintiffs also make much of the fact that they have sued "seven separate entities." Cross-Motion ¶ 12; North Jackson Mem. at 9; C&C Mem. at 8. In addition to the fact that the Alabama plaintiffs cite no authority in which the Panel transferred cases on that basis, these "seven separate entities" really boil down to three groups with the same attorneys representing the "entities" in each group: Caremark, Medco/Merck, and Express Scripts. Even more important, however, is the fact that ***not one*** of the defendants agrees that these cases, if transferred, belong in the Northern District of Alabama.

The remainders of the Alabama plaintiffs' memoranda attempt to bolster their arguments that the Northern District of Alabama's experience with these kinds of complex cases and accessibility equals that of the Eastern District of Pennsylvania. Despite the Alabama plaintiffs' assertion that the Alabama court "has previously presided over *many* important MLD [sic] proceedings," C&C Mem. at 10 (emphasis added); *see also* North Jackson Mem. at 12; Cross-motion ¶ 15, the Panel statistics reveal that the Northern District of Alabama has had only 5 MDL cases in the nearly 30 years since the Panel was established.[7]

---

[6] While Medco appears to limit its response to those actions in which Medco is a defendant, it is clear that North Jackson's complaint does not distinguish Medco's conduct from that of the other defendants. *See* Movants' Mem. Ex. C.

[7] *See* http://www.jpml.uscourts.gov/Statistics/Terminated-Litigations-As-Of-2005.pdf and http://www.jpml.uscourts.gov/Pending_MDLs/PendingMDL-March-06.pdf.

## II. Caremark's and Express Scripts' Arguments Opposing Transfer Have Been Rejected in Numerous Panel Decisions.

Defendants Caremark and Express Scripts both oppose transfer, setting forth two basic arguments in their respective responses: (1) that the cases are too far advanced so transfer will delay progress, and (2) the cases have little in common because the "primary claim" in the *North Jackson* cases concerns the conspiracy among the PBMs "and bears no similarity to the *Brady* case." *E.g.*, Caremark Mem. at 8. Both arguments are wrong and have been rejected by the Panel.

### A. The Cases are Not Too Far Advanced in These Circumstances.

Regarding defendants' first argument, that the cases are too far advanced, as Movants discussed in their Memorandum in support of this Motion, the parties in Pennsylvania, Alabama, and Illinois each have conducted a certain amount of discovery. Movants have been moving forward with fact discovery alongside class discovery. But there remains much discovery to be done in Pennsylvania, as there appears to be in the Alabama and Illinois actions (which, according to both Caremark and Express Scripts, the parties there have coordinated, at least for class certification purposes).[8] *See* Caremark Mem. at 13; Express Scripts Mem. at 8. Further, the California action, which all parties appear to agree is behind the other cases procedurally, will benefit from the discovery that already has been done. Transfer and coordination also will facilitate and streamline the process of any dispositive motions that are likely to arise.

As to delay, there is no reason why transfer should delay progress in any of these cases, as discussed above. Panel Rules contemplate that each case should proceed in the court in which

---

[8] Movants note the inconsistency between these parties' arguments that there are too many different defendants to coordinate discovery effectively through transfer and coordination, and their arguments that the three groups of defendants, one of which is a party in the Pennsylvania case, somehow managed to agree on a plan for discovery during the class certification stage, and appear to be preparing to do so for merits discovery. *E.g.*, Express Scripts Mem. at 8-9; Caremark Mem. at 13; Cross-motion ¶ 11. Indeed, the Stipulated Protective Order entered in the Alabama court contemplates common discovery among the parties by providing for use of Alabama discovery in the Caremark case. Express Scripts Mem. at 9; Caremark Mem. at 13.

it was filed while a § 1407 motion is pending. Panel Rule 1.5. And the Panel has been clear in its decisions that there is no reason why transfer should impede progress in these cases. *E.g.*, *Master Key*, 320 F. Supp. at 1407. *See also In re Zyprexa Prods. Liab. Litig.*, 314 F. Supp. 2d 1380, 1381 (J.P.M.L. 2004) (finding that the transferee judge has procedures available to accomplish moving cases toward remand "with a minimum of delay.").

**B. These Cases Involve Common Facts.**

The Panel also has rejected Caremark's and Express Scripts' second argument, that the cases have little in common factually because of the two additional defendant groups in the Alabama and Illinois actions. As Movants noted in their opening Memorandum as well as in response to the Alabama plaintiffs' similar argument above (and as a comparison of the complaints demonstrates), the Alabama and Illinois actions were patterned after the Movants' complaint. The two federal claims are simply variations of the core conduct Movants have alleged: a conspiracy to fix the prices for dispensing and sale of prescription drugs and to fix the terms and conditions under which pharmacies may perform these services. *E.g.*, Movants' Mem. Ex. A at ¶¶ 9-15; Ex. C at ¶¶ 5, 56-64. *See also* California complaint at 46-60.[9]

Even if these cases were different, as defendants claim, however, the Panel has stated:

> We observe that transfer under Section 1407 does not require a complete identity or even majority of common factual issues as a prerequisite to transfer. Nor is the presence of an additional defendant or product significant when the underlying action still contains, as here, products liability claims and factual allegations focusing on the safety of Zyprexa.

*Zyprexa*, 314 F. Supp. 2d at 1381-82. *See also Janus Mut. Funds Inv. Litig.*, 310 F. Supp. 2d 1359, 1361 (J.P.M.L. 2004) (finding that actions involving six different families of mutual funds involved common questions of fact and could be "expected to focus on similar mutual fund

[9] Movants submitted the California complaint, *Mike's Med. Ctr. Pharmacy v. Medco Health Solutions, Inc.*, No. 3:05-cv-05108 (N.D. Cal.), to the Panel via a separate filing on April 13, 2006.

trading practices and procedures with some common defendants and/or witnesses."); *In re MLR, LLC, Patent Litig.*, 269 F. Supp. 2d 1380, 1381 (J.P.M.L. 2003) (stating that "transfer under Section 1407 does not require a complete identity or even majority of common factual issues as a prerequisite to transfer."); *In re Commonwealth Oil/TESORO Petroleum Sec. Litig.*, 458 F. Supp. 225 (J.P.M.L. 1978) (rejecting opposition to transfer based on different composition of classes alleged and different issues; finding substantial common questions among the actions); *In re CBS Licensing Antitrust Litig.*, 328 F. Supp. 511 (J.P.M.L. 1971) (transferring for consolidation or coordination two actions with no common defendants where "the complaints are substantially similar and involve the legality of the same type of licensing agreements.").

Further, the Panel has found that, despite differences in parties, facts, or legal theories, cases are appropriate for transfer under § 1407 because the transferee court has at its disposal numerous techniques to manage such differences. For example, in *Janus Mut. Funds*, a case involving six different families of mutual funds, the Panel determined that all cases should be transferred to a single district, noting that the transferee court could employ a number of pretrial techniques "such as establishing separate discovery and/or motion tracks . . . and/or separate tracks for the different types of actions involved – to efficiently manage [the] litigation." *Janus Mut. Funds*, 310 F. Supp. at 1361. *See also In re South Central States Bakery Prods. Antitrust Litig.*, 433 F. Supp. 1127, 1129-30 (J.P.M.L. 1977) (finding transfer necessary, even though pretrial in one of the six actions apparently was "well advanced"; stating that transferee judge is free to determine the extent to which pretrial proceedings will be coordinated or consolidated, and can fashion a pretrial program "that takes into account the different facets and nuances of the litigation . . . .").

All of these cases indicate that the Panel should take the same action in these circumstances. As noted above and in Medco's Response, the PBM cases reflect substantial common questions relating to the existence, scope, operation, and effect of defendants' conduct on pharmacies. Accordingly, they are appropriate for transfer to and consolidation or coordination in the Eastern District of Pennsylvania. *E.g., In re Bristol Bay, Alaska, Salmon Fishery Antitrust Litig.*, 424 F. Supp. 504, 506 (J.P.M.L. 1976). *See also In re Commercial Money Ctr., Inc. Equip. Lease Litig.*, 229 F. Supp. 2d 1380, 1379 (J.P.M.L. 2002) (transferring actions for consolidation or coordination and finding that common questions existed "whether claimant to the bond or insurance proceeds is an investor or a lender, and regardless of the identity of the particular surety or insurance company involved.").

The Panel also should reject defendants' speculative argument that the differences in class definitions (the Pennsylvania and California plaintiffs allege a larger class of all pharmacies) will delay this litigation. Caremark Mem. at 14-15; Express Scripts Mem. at 9-10. Discovery of absent class members is disfavored, at best, and will be allowed only if a party satisfies a stringent burden to demonstrate that the discovery relates specifically to class-wide matters unavailable from other sources. *E.g., Clark v. Universal Builders, Inc.*, 501 F.2d 324, 340-41 (7th Cir. 1974).

Caremark appears to make an additional argument that transfer would be contrary to the purposes of § 1407 because its contracts with pharmacies contain a forum selection clause mandating that any federal action be litigated in the Northern District of Illinois. Caremark Mem. at 16. It cites no authority for this proposition, however, and the law appears to be contrary. For example, in cases implicating the National Bank Act, which contains a venue provision, courts have held that such a provision does not preclude transfer under § 1407. *E.g.*,

*In re New York City Mun. Sec. Litig.*, 572 F.2d 49, 51-52 (2d Cir. 1978) (holding that, for "excellent reasons" Congress made no specific exception to preserve the venue provision from the reach of § 1407). Nor should a contract provision similarly selecting a forum override proper transfer under § 1407.

While both Caremark and Express Scripts oppose transfer, each appends a brief argument to their respective responses suggesting the Northern District of Illinois as the proper transferee district in the event the Panel grants Movants' Motion. Given the relative posture of the cases in Illinois and Pennsylvania, the judicial resources available in Pennsylvania, and the other factors discussed in Movants' Memorandum, however, nothing in Caremark's or Express Scripts' discussion supports the argument that Illinois would be the better transferee district.

## CONCLUSION

For the reasons set forth above and in Movants' Motion and Memorandum, Movants respectfully request that the Panel enter an Order under 28 U.S.C. § 1407, transferring to the Eastern District of Pennsylvania all Pending Actions, as well as any future "tag-along actions" for coordination or consolidation.

Dated: May 10, 2006

Respectfully submitted,

**MUCH SHELIST FREED DENENBERG AMENT & RUBENSTEIN, P.C.**

By: ____________________

Michael J. Freed
191 N. Wacker Dr., Suite 1800
Chicago, Illinois 60606
T: (312) 521-2000
F: (312) 521-2100

**Attorneys for Movants**

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

MAY 11 2006

FILED
CLERK'S OFFICE

**BEFORE THE JUDICIAL PANEL ON**

**MULTIDISTRICT LITIGATION**

| | | |
|---|---|---|
| **In re:** | ) | **MDL Docket No. 1782** |
| **PHARMACY BENEFIT MANAGERS ANTITRUST LITIGATION** | ) | |

## CERTIFICATE OF SERVICE

I, Jean K. Janes, an attorney, hereby certify that on this 10th day of May 2006, I caused a true and correct copy of our **Reply Memorandum In Support Of Motion Under 28 U.S.C. § 1407 By Brady Enterprises, Inc., *et al.*, To Transfer For Coordinated Or Consolidated Proceedings In The United States District Court For The Eastern District Of Pennsylvania** to be served via U.S. mail on the parties listed on the attached Service List.

RECEIVED
2006 MAY 11 A 11: 21

Jean K. Janes

**SERVICE LIST**

Craig C. Corbitt
**Zelle Hofmann Voelbel Mason & Gette LLP**
44 Montgomery Street, Suite 3400
San Francisco, CA 94104-4807

*Attorneys for Mike's Medical Center Pharmacy and Daniel P. Donovan, Inc. d/b/a West Marin Pharmacy, individually and on behalf of all others similarly situated*

Robert M. Foote
**Foote, Meyers, Mielke, Flowers, LLC**
416 South Second Street
Geneva, IL 60134

*Attorneys for Plaintiffs North Jackson Pharmacy, Inc. and C & C Inc. d/b/a Big C Discount Drugs Inc., individually and on behalf of all others similarly situated*

Kenneth R. Logan
**Simpson Thacher & Bartlett LLP**
425 Lexington Avenue
New York, NY 10017-3954

*Attorneys for Defendants Express Scripts, Inc.*

Michael Sennett
**Bell Boyd & Lloyd LLC**
70 West Madison Street, Suite 3100
Chicago, IL 60602

*Attorneys for Defendants Caremark RX Inc., Caremark Inc. and Advance PCS*

James P. Tallon
**Shearman & Sterling LLP**
599 Lexington Avenue
New York, NY 10022-6069

*Attorneys for Medco Health Solutions, Inc., Merck & Co., Inc. and PAID Prescriptions LLC*

Joe R. Whatley, Jr.
**Whatley Drake, LLC**
2323 2nd Avenue, North
P.O. Box 10647
Birmingham, AL 35202-0647

*Attorneys for Plaintiffs North Jackson Pharmacy, Inc. and C & C Inc. d/b/a Big C Discount Drugs Inc., individually and on behalf of all others similarly situated*